FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 SEP 29 PM 1:09

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| VANESSA TWYMON MCKINNEY, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 97-B-1018-S |
| ALABAMA INSTITUTE FOR DEAF AND BLIND, | } |
| Defendant. | } |

ENTERED

SEP 2 9 1999

**MEMORANDUM OPINION**

Currently before the court is the motion of defendant Alabama Institute for Deaf and Blind ("AIDB") for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

**I. FACTUAL SUMMARY**

AIDB is a state supported school that conducts educational and training programs for the deaf, blind, and sensory impaired residents of the State of Alabama. (PX A at 14-15).[1] AIDB operates the Alabama Industries for the Blind ("AIB"), a workshop for blind and deaf persons. (*Id.* at 15; DX R at ¶ 2). The AIB has a manufacturing facility in Talladega, Alabama, which manufactures various products, including several products for the United States government. (DX R at ¶ 2). The primary purpose of AIB is to provide gainful employment to the blind. (DX E at 5). The majority of positions available at AIB over the years have been in the needle trades

---

[1] Both plaintiff and defendant used letters as exhibit labels for their evidence in support of and in opposition to defendant's Motion for Summary Judgment. In this opinion, plaintiff's exhibits are referenced as PX followed by the exhibit letter. Defendant's exhibits are referenced as DX followed by the exhibit letter.

27

or sewing. (PX A at 16). AIB has operated several production lines, including a sewing division, a broom shop, and a paper product shop. (*Id.* at 16; DX B at 17).

Many of AIB's products are manufactured for military personnel. (*Id.*). These products include neckties, ammunition pouches, flyer kit bags and screen print t-shirts/sweatshirts. (*Id.*). AIB normally employs approximately 200 people. (DX R at ¶ 3). The workforce fluctuates based on production needs. (*Id.*). AIB will always give a blind person first priority in a job a blind worker is capable of performing. (DX F at 33).

Plaintiff Vanessa Twymon McKinney was hired by AIDB in March of 1995, as a sewing machine operator setting pads in the suspender location at AIB. (PX B; PX H at 21,50). Plaintiff is a black female. (PX H at 65). She is not deaf, blind or handicapped in any way. (*Id.* at 48). In 1995, AIB agreed to manufacture suspenders under a contract with the United States government. (DX R at ¶ 5). AIB hired plaintiff to work specifically on the suspenders contract. (DX R at ¶ 5; DX G). Plaintiff's work involved setting pads. (DX G). When hired, plaintiff was told that she could be laid off if AIB needed to replace her with a deaf or blind person. (PX H at 57).

During plaintiff's employment, Ray Miller was the general manager of AIDB. Miller frequently made racial slurs and other derogatory remarks about black employees. (PX D at 43-44; PX J at 28, 30-31). For example, Miller once told Assistant Manager Jordan to "[h]urry up and straighten up that bunch of niggers out. You know how they are. You have to calm them down every once and awhile." (PX D at 43). Miller also used racially derogatory terms such as "nigger woman" and "old nigger woman" in reference to AIDB employees. (*Id.* at 44).

At the time plaintiff began her employment, AIB had not yet begun production on the new suspenders contract because the sewing machines were not ready. (DX F at 15). As a

result, plaintiff was temporarily placed on another sewing machine in the kit bags department putting hooks on suspenders. (*Id.*; PX H at 62). Needle trade jobs were paid on a "piece rate" basis, which allowed for pay above the minimum wage if the employee reached a certain production quota. (PX A at 71-72). Plaintiff was able to make production when she first went to AIB on a temporary assignment in the kit bags department. (DX F at 15).

Since plaintiff was originally hired to set pads, once the suspenders sewing machines were ready, plaintiff began the job of setting pads on suspenders. (*Id.*). Setting pads on suspenders was a difficult job, and no employee was able to meet production on this job. (DX I at 29). After working on the suspenders contract, plaintiff asked line supervisor Nell Brewer for a "promotion" to a production position in the kit bags department. (PX H at 84). Nell Brewer denies that plaintiff asked for a "promotion" or a transfer to any other position. (DX I at 17). Cathy Limbaugh, AIDB personnel director, testified that a transfer from the suspenders department to the kit bags department is not a "promotion" as both positions are line production positions. (DX B at 77). However, a worker in the kit bags department could expect higher pay because the work was not as hard; therefore, production was easier to attain. (PX H at 83-84).

Plaintiff wanted a transfer to the kit bags department because the job was easier. (PX H at 85). When plaintiff asked Brewer for the transfer, Brewer told her that the position was already filled. (*Id.* at 87). Plaintiff states that the position was filled by Jackie Duncan, a white female. (*Id.*) Jackie Duncan testified that she had been rehired to work in the kits bags department, but was temporarily put on the suspenders contract to assist with production when the suspenders contract needed additional workers. (DX K 14-17). Plaintiff points to exhibits which would indicate that Duncan was hired to work in the suspenders department and later

3

transferred to the kit bags department. (PX M and O).[2]

Plaintiff complained to another line supervisor, Jeanette Smith, when she did not get the kit bags job. (PX H at 91-93). Thereafter, on September 11, 1995, plaintiff filed a Charge of Discrimination with the EEOC. (PX S). Plaintiff alleged that AIB failed to promote her to the kit bags position because of her race. (PX H at 96). Cathy Limbaugh, AIDB's personnel director, investigated the EEOC charge. (PX A at 69). As part of her investigation, Limbaugh spoke with Assistant Plant Manager Jimmy Jordan. (*Id.* at 69, 94-95). Jordan testified that he did not talk to Cathy Limbaugh until after the plaintiff was terminated. (PX D 26-27, 30, 51, 55). Ray Miller also testified that he did not know about plaintiff's EEOC charge prior to her termination. (PX K at 34). On the other hand, plaintiff testified that before she was terminated and not long after she filed her EEOC charge, Miller approached her at her machine and asked why she had filed a charge with the EEOC. (PX H at 143, 164-65).

The job description for production workers required that all employees were expected to work overtime if required by a shop foreman. (DX E at 7). On Saturday, October 7, 1995, plaintiff failed to report to work overtime. (DX P; PX H at 69-70). The following Monday, plaintiff went to the office of AIB General Manager Ray Miller when she reported to work. (PX H at 69-70). He inquired why she failed to report to work. (*Id.*). Plaintiff explained to Miller that her son was sick and she had called in advance. (*Id.*). According to plaintiff, Miller told her that this was not a good excuse, and he implied that she should quit. (*Id.* at 70). Miller told Norman Culver about his meeting with Ms. McKinney. (PX E at 13). Plaintiff testified that Culver then told her she had to work Saturdays and that if she didn't come in he could fire her.

---

[2] As noted, the testimony from Duncan that is before the court is to the contrary.

(PX H at 126-27). Plaintiff claims that Miller and Norman Culver, the production manager, disciplined her in retaliation for filing the EEOC claim. (*Id.* at 72, 126-27). Apparently, the only discipline received was verbal.

Plaintiff was considered a good employee and her supervisors had no problems with her. (PX J at 11-13). On November 10, 1995, AIB completed the suspenders contract, and plaintiff's employment was terminated. (DX B at 44; DX F at 27-28). Plaintiff's "Record of Personnel Action" indicates that she was terminated because the suspenders contract was completed and her services were no longer needed. (DX M). The decision to terminate plaintiff was recommended by Jimmy Jordan after a discussion with Norman Culver:

> Q. Mr. Jordan, were you involved in the decision to terminate Ms. McKinney or Ms. Twymon's employment?
>
> A. Yes. I did the paperwork – or my office did.
>
> Q. What was the decision based on?
>
> A. We were closing the department down. No longer needed her services.
>
> Q. Who else participated in that decision?
>
> A. Well, probably Culver, the production man, and the supervisor came to me and told me they were closing the area down and didn't need her services anymore.
>
> Q. What about Ray Miller, did he participate in her termination?
>
> A. Probably not at this particular point in time. He probably signed the document. He signed most of the documents that come out from Industries, whether it be personnel, purchasing, or whatever.

(DX F at 27-28).

In an Affidavit filed in support of the Motion for Summary Judgment, Jordan testified that he "did not discuss [the] decision to terminate Ms. McKinney with either Bill Haynes, [the]

plant manager, or Ray Miller, the general manager for the Industries for the Blind." (DX R at ¶ 8). Ray Miller, as general manager, signed the Record of Personnel Action reflecting plaintiff's termination. (DX M). Miller signed the Record of Personnel Action in a blank space provided for the person recommending the action (*Id.*). However, both plant manager Bill Haynes and Assistant Plant Manager Jordan testified that Miller's signature on the Record of Personnel Action does not indicate that Miller had any personal involvement in the decision to terminate the plaintiff.

> According to Mr. Jordan:
>
> Other than signing the record of personnel action . . . which Mr. Miller is required by our policies to sign, **Mr. Miller was not involved in the decision to terminate Ms. McKinney. Instead, that decision was made by me and production manager, Norman Culver, along with input from the production line supervisors.**

(DX R at ¶ 8) (emphasis added).

> On this point Bill Haynes testified as follows:
>
> At the time Ms. McKinney was hired and later terminated, our General Manager Ray Miller was required to sign all records of personnel action. . . . **Mr. Miller's signature on the <u>Record of Personnel Action</u> . . . does not indicate specifically that Mr. Miller had any involvement with the decision to terminate Ms. McKinney. Instead, at that time, Mr. Miller was required to sign all records of personnel action.**

(DX S at ¶¶ 4 and 5) (emphasis added).

At the conclusion of the suspenders contract, there were no available positions in which to transfer plaintiff.[3] (DX J at 18). On plaintiff's final day of employment, she finished sewing her last pad at 2:00 or 2:30 p.m. (PX H at 119). At approximately 3:00 p.m., General Manager

---

[3] In fact, the AIB laid off blind workers for the first time in the history of the Institute one month prior to plaintiff's termination. (DX B at 112)

6

Ray Miller told plaintiff that AIB had completed the suspenders contract and that her services were no longer needed, but she could continue to work through the end of the day. (*Id.*).

Plaintiff alleges that the defendant engaged in racial discrimination and retaliation in employment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq. and 42 U.S.C. § 1981a, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. (Pl.'s Compl. at ¶ 1). Plaintiff claims that AIDB discriminated against her because of her race (black) by denying her a promotion that was given to a white employee with less seniority and by terminating her employment. (*Id.* at ¶ 2; Pl.'s Br. in Opp. Def.'s Mot. Summ. J. at 12). Plaintiff also contends that she was disciplined and terminated because of her race and in retaliation for having filed a charge of discrimination with the EEOC.[4] (Pl.'s Compl. at ¶ 13).

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is

---

[4] Plaintiff's original complaint included a claim that AIDB "willfully" violated the provisions of the Fair Labor Standards Act ("FLSA"). This claim was based on plaintiff's receipt of two paychecks from AIDB in which her hourly rate of pay was listed as $4.2498 instead of $4.25. Plaintiff later dismissed her FLSA claim.

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

**A.     Plaintiff's Claims Under Title VII That She Was Not Promoted, Was Disciplined, And Was Terminated On The Basis Of Her Race**

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . " 42 U.S.C. § 2000e-2(a)(1).[5] In any action alleging disparate treatment by an employer, the plaintiff must prove the employer acted with a discriminatory motive. *International Board of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977). To establish a prima facie case of discrimination, a plaintiff may employ direct,

---

[5] Plaintiff has asserted claims pursuant to Title VII, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. Because the proper allocation of burdens of proof based on a Section 1983 claim is the same for a case based on Title VII, the court need not address the Section 1983 claim separately from the Title VII claim. *Richardson v. Leeds Police Dept.,* 71 F.3d 801, 805 (11th Cir. 1995); *Cross v. State of Alabama,* 49 F.3d 1490, 1508 (11th Cir. 1995). In both instances, plaintiff must prove that the defendant acted with discriminatory intent. *Richardson,* 71 F.3d at 805. Finally, the Eleventh Circuit has held that the elements of a disparate treatment claim are identical under Title VII and 42 U.S.C. §1981. *Vance v. Southern Bell Telephone & Telegraph Co.*, 863 F.2d 1503, 1509 n.3 (11th Cir. 1989).

statistical, or circumstantial evidence. *Verbreaken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature. "When there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available." *Trotter v. Board of Trustees of the University of Alabama*, 91 F.3d 1449, 1453 (11th Cir. 1996) (citations omitted).

*Direct Evidence of Discrimination*

When a plaintiff establishes by direct evidence that a contested employment decision was motivated by a discriminatory animus, the employer "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's race into account." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258 (1989). In other words, "defendant must prove that there was a separate, racially neutral (i.e., non-discriminatory) reason" for its contested employment decision. *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 925 (11th Cir. 1990).

Plaintiff contends that she offered direct evidence of discrimination in the form of racial slurs and derogatory remarks by general manager Ray Miller. While plaintiff has offered evidence that Miller made racial slurs during the 20-plus years that he worked at AIB, there is no evidence that Miller directed any racial slurs towards the plaintiff.[6] Further, there is no evidence that Miller made any racial comments in the context of any employment issues pertaining to the plaintiff. "[O]nly the most blatant remarks, whose intent could only be to discriminate on the

---

[6] Miller denies having used the word "nigger." However, for purposes of summary judgment, the court will assume that Miller made racial slurs.

basis of [an impermissible factor] constitute direct evidence." *Coats v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir. 1992).[7] The court concludes that plaintiff has offered no direct evidence with regard to any of her claims of discrimination on the basis of race.

*Circumstantial Evidence of Discrimination*

When a plaintiff's evidence is circumstantial, the Supreme Court has developed a three-stage framework for evaluating the strength of the plaintiff's proof and plaintiff's ability to withstand a defendant's motion for summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must establish a prima facie case by proving that (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the defendant was seeking applicants; (3) despite her qualifications, she was rejected; and (4) the defendant gave the position to a person who was not a member of a protected class. *McDonnell Douglas*, 411 U.S. at 802. Second, once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for not hiring the plaintiff. *Clark*, 990 F.2d at 1227. If the employer does so, the burden shifts back to the plaintiff to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Id.* at 1228.

---

[7] In *Wright v. Southland Corp.*, 1999 WL 688051 (11th Cir. Sept. 3, 1999), Judge Tjoflat discussed at length the Eleventh Circuit jurisprudence with regard to "direct evidence" in the context of discrimination cases. He opined that "direct evidence" should be defined as evidence from which a reasonable trier of fact could find by a "preponderance of the evidence" a causal link between an adverse employment action and a protected personal characteristic. Although concurring in the result or judgment, none of the members of the panel joined Judge Tjoflat's opinion.

1.   **Plaintiff's Claim that Defendant Failed to Transfer or Promote Her to the Kit Bags Department on the Basis of Her Race**

Plaintiff has established a prima facie case of discrimination with respect to AIDB's failure to promote her to the kit bags job. Plaintiff is a black female, and is therefore a member of a protected class. Drawing all reasonable inferences in favor of the plaintiff for purposes of summary judgment, the court will accept plaintiff's testimony that she did ask Brewer for a transfer to the kit bags department and that such a transfer would have constituted a promotion. Further, plaintiff was qualified for the position in the kit bags department, and the kit bags position was given to a white female.[8]

Since plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for not promoting the plaintiff. *Clark*, 990 F.2d at 1227. "This 'burden of proof' is to be understood as a burden of production, not persuasion." *Busby v. City of Orlando*, 931 F.2d 764, 777 n.12 (11th Cir. 1991)(citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989)). Defendant is not required at this juncture to prove absence of discriminatory motive, or even to persuade the court that the reasons proffered actually motivated its decision. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). On the other hand, "[i]f the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted" and "drops from the case." *Burdine,* 450 U.S. at 255; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). "A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's

---

[8] As noted, defendant's evidence is that a transfer from the suspenders department to the kits bags department is not a promotion. The real significance of the plaintiff not being transferred comes because if she had been transferred or, according to plaintiff, promoted, she would arguably not have been subject to termination at the time the suspenders contract was completed.

initial evidence." *Burdine*, 450 U.S. at 256 n.10.

Defendant first contends that plaintiff did not ask to be transferred from the suspenders department to the kit bags department. As noted, although plaintiff contends she asked line supervisor Nell Brewer for a "promotion" to a production position in the kits bags department, Brewer denies the conversation occurred. Obviously, absent other evidence that plaintiff should have been considered for the position, if plaintiff did not apply for a transfer/promotion, defendant could not have been discriminating against her in awarding the position to another person.

The primary nondiscriminatory reason asserted by defendant for the failure to transfer the plaintiff is that defendant asserts that all white employees who were transferred had more seniority than the plaintiff. Defendant also asserts that Jackie Duncan, the person plaintiff claims should not have been transferred, was originally hired to work in the kit bags department and had only been loaned to work in the suspenders department. Thus, Duncan was simply being transferred back to the position for which she was originally hired while plaintiff was still needed in the suspenders department where she was originally hired .

Four of the employees that were transferred off of the suspenders contract were white. These employees were Jeanette Crews, Barbara Hutton, Jackie Duncan, and Donna.[9] (PX H at 152). Plaintiff concedes that three of the employees should have been transferred off of the suspenders contract prior to her because they had more seniority. (*Id.* at 155). However, plaintiff contends that Jackie Duncan should not have been transferred before her because plaintiff had more seniority than Duncan. (*Id.* at 155-156). Although rehired at AIB ten days after plaintiff,

---

[9] Plaintiff stated that she was not aware of Donna's last name. (PX H at 152).

Jackie Duncan had previously worked for AIB.[10] Defendant thus contends that Duncan had more seniority than plaintiff and was entitled to be transferred to the kit bags job for which she was originally hired. Additionally, as the suspenders contract remained in production, plaintiff was still needed in that position.

Thus, AIDB has offered three legitimate, nondiscriminatory reasons for its failure to transfer or promote plaintiff to the kit bags department:

1. Plaintiff did not ask for a transfer.[11]
2. Duncan was simply transferring back to her original department.
3. Duncan had more seniority than the plaintiff.

As argument of pretext, plaintiff notes that although Duncan had previously been employed by AIDB, she had been terminated four years prior to being rehired for failing to report to work. (PX N).[12] Plaintiff also argues that AIDB does not have a policy or past precedent to support the conclusion that Duncan retained her seniority for four years after being fired. (Pl.'s Opp. Brief at 7). Evidence supporting this argument might support an inference of pretext. However, there is no *evidence* before the court that a person who left AIDB employment and then returned would not retain some seniority rights. Plaintiff also contends that defendant's argument that Jackie Duncan had been loaned to the suspenders department from the kit bags department is false and therefore is evidence of pretext. Two documents (PX M and O) support plaintiff's argument in

---

[10] Plaintiff admitted that if Jackie Duncan had more seniority, then Duncan should have received the transfer/promotion to the kit bags department. (PX H at 108).

[11] As noted, for purposes of this Motion, the court will accept that plaintiff did apply for a transfer.

[12] Ms. Duncan (now Brimm) testified that she was not terminated. (DX F at 21).

13

this regard.

Viewing the evidence in the light most favorable to plaintiff a reasonable juror could conclude that, like the plaintiff, Duncan was hired in the suspenders department. Thus, defendant's statement that one of the reasons Duncan was transferred to kit bags instead of the plaintiff was because Duncan was simply transferring back to her original department, could be viewed as pretext. Nevertheless, the court finds that plaintiff has not put forth sufficient evidence on which a reasonable jury could conclude that the defendant's legitimate nondiscriminatory reason, that being that Jackie Duncan was moved to the kit bags department instead of the plaintiff because of Duncan's seniority with AIDB, was a pretext for illegal discrimination based on the plaintiff's race. Therefore, defendant is entitled to judgment as a matter of law on this claim.

### 2. Plaintiff's Claim that She was Disciplined on the Basis of Her Race

Plaintiff also contends that she was discriminated with regard to discipline on the basis of her race. On October 7, 1995, plaintiff was reprimanded for failing to report to work. Plaintiff testified she missed work because her child was sick, and that AIDB did not reprimand a similarly situated white employee. Apparently the only discipline received was verbal. This is the only time plaintiff claims to have been unfairly disciplined.

In order to make a prima facie case based on different application of work or discipline rules, plaintiff must show that the misconduct for which she was disciplined was nearly identical to the conduct of another employee outside the protected class who was not disciplined. *Jones v. Gerwens*, 677 F. Supp. 1151, 1152 (S.D. Fla. 1988)(citing *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1184 (11th Cir., 1984)). There is no evidence before the court other than plaintiff's own testimony that a similarly situated white employee was not disciplined.

14

Moreover, the court is unwilling to say that a verbal discipline of the kind related by plaintiff constitutes actionable adverse action.[13] Plaintiff has failed to establish a prima facie case with respect to her claim that she was disciplined on the basis of her race.

Even assuming a prima facie case, defendant has asserted a legitimate nondiscriminatory reason for the discipline, that being that plaintiff's position required her to work overtime as needed unless a satisfactory reason was given in advance. Plaintiff has failed to produce any evidence that this articulated reason is pretext for illegal discrimination on the basis of plaintiff's race. Therefore, defendant is entitled to judgment as a matter of law on this claim.

### 3. Plaintiff's Claim that She was Terminated on the Basis of Her Race

For purposes of this analysis, the court will assume plaintiff has established a prima facie case of race discrimination with regard to plaintiff's termination. Plaintiff's employment was terminated when the suspenders contract was completed. Plaintiff was hired to do production work on a specific government contract. It is undisputed that AIB needed fewer employees after the suspenders contract was completed. Defendant contends that plaintiff was terminated because the suspenders contract for which she was hired was completed. By meeting its burden of producing a legitimate reason for its decision for terminating plaintiff's employment, AIDB successfully eliminated the presumption of discrimination that accompanied plaintiff's prima facie case.

---

[13] "The purpose of relief under the federal employment anti-discrimination laws is to make persons whole for injuries suffered on account of unlawful employment discrimination." *EEOC v. Massey Yardley Chrysler Plymounth, Inc.,* (117 F. 3d 1244, 1251 (11th Cir. 1997). Therefore, an employee must ultimately show some employment injury. In other words, an employment action must affect a term or condition of employment and is not adverse merely because the employee dislikes it or disagrees with it. *Perryman v. West,* 949 F. Supp. 815, 819 (M.D. Ala. 1996).

If the employer carries its burden of production, the burden shifts back to the plaintiff to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Burdine*, 450 U.S. at 255; *Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir. 1994). Thus, at this third level of analysis, plaintiff has the burden of proving that the defendant's explanation is a pretext for discrimination.

Plaintiff has not shown that AIDB's stated explanations were pretextual. Plaintiff acknowledges that she was terminated because the suspenders contract was complete. However, plaintiff argues that this reason was pretextual because she should have been transferred out of the suspenders job before the contract was complete to a kits bags job instead of Jackie Duncan. As previously noted, Duncan had more seniority than plaintiff. Moreover, plaintiff was still needed in the suspenders job. Plaintiff has not put forth sufficient evidence on which a reasonable jury could conclude that each reason articulated by the defendant for not moving the plaintiff to a kit bags job and the reasons given by the defendant for plaintiff's termination were pretext for illegal discrimination based on the plaintiff's race.[14]

---

[14] Plaintiff argues that she has presented direct evidence of discrimination through the remarks of Roy Miller. As noted, the court concludes that plaintiff's evidence with regard to Miller does not constitute direct evidence of discrimination. Moreover, this evidence does not aid plaintiff's efforts to establish her case through circumstantial evidence because plaintiff has offered no evidence on which a reasonable jury could conclude that Miller had *any* input in the decision to not transfer plaintiff to the kit bags department and in the later decision to terminate her. *See Holifield v. Reno*, 115 F.3d 1555, 1563-64 (11th Cir. 1997) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.")

### B. Plaintiff's Title VII Retaliation Claims

Title VII provides protection against retaliation for those who oppose discrimination.[15] To establish a prima facie case of retaliation, plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is some causal relation between the two events. *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994). The causal link requirement is interpreted broadly, as a plaintiff merely has to prove the protected activity and the negative employment action are not completely unrelated. *Meeks*, 15 F.3d at 1021.

Once a prima facie case is established, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden in this regard is "exceedingly light." *Meeks*, 15 F.3d at 1021. The plaintiff must then demonstrate that the employer's proffered explanations are a pretext for retaliation, but the burden of persuasion remains at all times with the plaintiff. *EEOC v. Reichhold Chemical, Inc.*, 988 F.2d 1564, 1572 (11th Cir. 1993). The plaintiff may succeed "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Accordingly, defendant will be entitled to summary judgment if it can show that, based on the

---

[15] The express statutory language prohibiting retaliation provides:
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3.

17

undisputed facts, plaintiff cannot establish a prima face case for retaliation, nor rebut the nondiscriminatory reasons proffered as justification for the challenged conduct.

### 1. Termination Claim

Plaintiff contends that her employment was terminated in retaliation for filing an EEOC claim. It is arguable whether plaintiff has put forth sufficient evidence to establish the third prong of a prima facie case of retaliation. Nevertheless, for purposes of this analysis, the court will assume a prima facie case.

As previously discussed, AIDB has offered legitimate, nondiscriminatory reasons for terminating her employment. It is undisputed that plaintiff was hired to do production work on a specific government contract. When the suspenders contract was completed, plaintiff's employment was terminated. AIDB needed fewer employees after the suspenders contract was completed. Completion of this government contract was a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Plaintiff has not put forth sufficient evidence on which a reasonable jury could conclude that the reasons offered by the defendant for the termination of the plaintiff were pretext for illegal retaliation under Title VII.

### 2. Discipline Claim

Plaintiff also contends that she was discriminated with regard to discipline in retaliation for filing an EEOC charge. On October 7, 1995, plaintiff was reprimanded for failing to report to work. Plaintiff has failed to establish a prima facie case of retaliation with respect to her claim that she was disciplined in retaliation for having filed an EEOC charge. She has not put forth sufficient evidence on which a reasonable jury could find that Miller and Culver, the two AIDB employees that she claims retaliated against her, had knowledge of her EEOC charge at the time she was disciplined. As stated above, the court is unwilling to find that the verbal statements that

plaintiff contends were directed towards her constitute actionable adverse action. Therefore, plaintiff has failed to establish a prima facie case that she was disciplined in retaliation for having filed an EEOC charge. However, even assuming a prima facie case, defendant has asserted a legitimate nondiscriminatory reason for the discipline, that being that plaintiff's position required her to work overtime as needed unless a satisfactory reason was given in advance. Plaintiff has not produced evidence on which a reasonable jury could conclude that this articulated reason is pretext for illegal retaliation. Therefore, defendant's motion for summary judgment on this claim is due to be granted.

## IV. CONCLUSION

Upon consideration of all the evidence in the case, the court concludes that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law.[16] An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 29th day of September, 1999.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

---

[16] AIDB also contends that summary judgment is appropriate because the Eleventh Amendment bars plaintiff's claims under 42 U.S.C. §§ 1981 and 1983. Based on the court's findings that defendant is entitled to judgment as a matter of law on application of Title VII law to the facts of this case, the court will not address this argument of the defendant.